UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-436-RLV
(3:04-cr-166-RLV-1)

| | |
|---|---|
| **HENRY LEE HARRIS,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court upon Petitioner Henry Lee Harris's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255. (Doc. No. 1.) Petitioner is represented by the Federal Defenders of Western North Carolina. Also before the Court is the Government's Motion to Dismiss. (Doc. No. 7.)

**I. BACKGROUND**

Harris was indicted and charged with two counts of possession of a firearm or ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). Superseding Indictment, Doc. No. 11.[1] On March 5, 2005, a jury found Harris guilty of one of the two felon-in-possession offenses. Verdict, Doc. No. 28.

In Harris's presentence report ("PSR"), the probation officer determined that Harris was an armed career criminal, subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). PSR ¶ 22, Doc. 73. The probation officer calculated a total

---

[1] Unless otherwise indicated, documents cited without parentheticals are from Harris's underlying criminal case: United States v. Harris, 3:04-cr-166-RLV-1 (W.D.N.C.). Documents cited within parentheticals are from the instant civil action: 3:16-cv-436-RLV.

1

offense level of 33 and a criminal-history category of V, yielding an applicable Sentencing Guidelines range of 210 to 262 months in prison for the felon-in-possession offense. PSR ¶ 73. The probation officer also noted that Harris faced a statutory mandatory-minimum term of 180 months in prison under the ACCA. PSR ¶ 72. Harris did not object to his classification as an armed career criminal. PSR 19.

The Court imposed the mandatory minimum sentence of 180 months imprisonment. Harris appealed, and the Fourth Circuit affirmed this Court's judgment. United States v. Harris, 332 F. App'x 55 (4th Cir. 2009).

On June 21, 2016, Harris filed the instant Motion to Vacate, seeking relief under Johnson v. United States, 135 S. Ct. 2551 (2015). (Doc. No. 1.) On June 24, 2016, the Federal Defenders of Western North Carolina entered an appearance on Harris's behalf and filed a supplement to the Motion to Vacate. (Doc. No. 3.) Harris contends that under the holding in Johnson, id., he no longer qualifies as an armed career criminal, that enhancement of his sentence under the ACCA violated his right to due process, and that his sentence is in excess of the maximum authorized by law.

The Government has moved to dismiss (Doc. No. 7), and Harris has filed a Response/Reply (Doc. No. 8). This matter is ripe for review.

## II. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of an action based upon a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief under § 2255, a petitioner must prove that: (1) the sentence imposed "violat[ed] . . . the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such a sentence;" or (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

After examining the record in this matter, the Court finds that the claims presented in Harris's § 2255 Motion can be resolved based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION

The Armed Career Criminal Act, 18 U.S.C. § 924(e), provides for a mandatory minimum sentence of 15 years in prison for a defendant convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g), if the defendant has at least three prior convictions for serious drug offenses or violent felonies. See § 924(e)(1). Without the ACCA enhancement, the statutory maximum is 10 years or 120 months in prison. See § 924(a)(2).

"Violent felony" is defined in the ACCA as "any crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" Id. § 924(e)(2)(B) (emphasis added). The italicized closing words of § 924(e)(2)(B) constitute the ACCA's residual clause, which, in Johnson, the Supreme Court struck as unconstitutionally vague under the due process clause. 135 S. Ct. at 2556, 2558. The Court left intact the remainder of the ACCA's "violent felony" definition, including the four enumerated offenses and the "force clause." Id. at 2563.

Thus, a defendant who was sentenced under the ACCA to a mandatory minimum term based on a prior conviction that satisfies only the residual clause of the ACCA's "violent felony" definition is entitled to relief from his sentence. In Welch v. United States, the Supreme Court held that the ruling in Johnson applies retroactively to cases on collateral review. 136 S. Ct. 1257, 1268 (2016).

Harris's PSR does not identify which of Harris's prior offenses qualified as predicates for

the ACCA enhancement, but it does identify the following offenses for which a sentence of more than one year in prison was imposed: (1) a 1965 North Carolina conviction for breaking and entering; (2) a 1970 North Carolina conviction for housebreaking; (3) three 1973 South Carolina convictions for armed robbery, all of which arose out of the same criminal incident; (4) a 1983 North Carolina conviction for escape; and (5) a 1988 North Carolina conviction for second-degree burglary. See PSR ¶¶ 27, 29–31, and 34. Harris contends that in light of Johnson, only his 1970 North Carolina conviction for housebreaking and his 1973 South Carolina armed robbery convictions qualify as predicate violent felonies under the ACCA, and that the rest qualified only under the ACCA's now-void residual clause.[2] As such, Harris argues, his sentence of 180 months is a per se illegal sentence that both exceeds the 10-year statutory maximum, see § 924(a)(2), and violates due process of law.

The Government, on the other hand, contends that Harris's 1965 North Carolina conviction for breaking and entering and his 1988 North Carolina conviction for second-degree burglary both qualify as violent felonies under the enumerated burglary offense left intact by the Johnson decision. Furthermore, the Government argues that Harris's claim is procedurally defaulted. Because this Court concludes that Harris's second-degree burglary conviction qualifies as a predicate enumerated offense under the ACCA, the Court finds it unnecessary to address the Government's procedural default argument or whether Harris's 1965 conviction for breaking and entering also qualifies as a predicate offense.

To determine whether a prior conviction qualifies as an ACCA enumerated offense, courts employ what is known as "the categorical approach." Descamps v. United States, 133 S.

---

[2] The Government concedes that because Harris's three 1973 armed robbery convictions appear to have arisen out of the same incident, they count as only one predicate offense. (Mot. to Dismiss 5, Doc. No. 7 (citing 18 U.S.C. § 924(e) (requiring that predicate offenses be "committed on occasions different from one another")).) The Government also agrees that Harris's North Carolina conviction for escape no longer qualifies as a "violent felony" under the ACCA. (Mot. to Dismiss 5 (citing United States v. Hairston, 71 F.3d 115, 117 (4th Cir. 1995)).)

4

Ct. 2276, 2283 (2013). Under this approach, the court "focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements of [the listed] generic [crime], while ignoring the particular facts of the case." Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). A state conviction will qualify as an enumerated offense, and thus a predicate crime under the ACCA, only if the elements of the state-law crime of conviction "are the same as, or narrower than, those of the [ACCA-enumerated] generic offense," regardless of whether the defendant actually committed the offense in its generic form. Mathis, 136 S. Ct. at 2248; Descamps, 133 S. Ct. at 2283.

In Taylor v. United States, the Supreme Court adopted a "generic, contemporary meaning" of the crime of "burglary" as that term is used in the ACCA. 495 U.S. 575 (1990). Before doing so, the Court considered the traditional, common-law definition of burglary, i.e., the breaking and entering of a dwelling at night, with intent to commit a felony. Id. at 592. The Court noted that "common-law burglary is the core, or common denominator, of the contemporary usage of the term ["burglary]" and acknowledged that "[w]hatever else the Members of Congress might have been thinking of, they presumably had in mind at least the 'classic' common-law definition when they considered the inclusion of burglary as a predicate offense" in the ACCA. Id. at 592-93.

The Court recognized, however, that most states had expanded the definition of burglary beyond its common-law roots (e.g., to include unlawful entry during daytime, entry without a "breaking," and entry into structures other than dwellings). See id. at 593. Consequently, the Court concluded, when Congress included "burglary" as a predicate offense under the ACCA, it meant "burglary" in the "generic sense in which the term is now used in the criminal codes of most States." Id. at 598 (citations omitted).

The Taylor Court held that "generic burglary" is the "unlawful or unprivileged entry into,

or remaining in, a building or other structure, with intent to commit a crime." Id. at 599. As such, the definition of "generic burglary" is broader than common-law burglary. Taylor, 495 U.S. at 599 ("If the state statute is narrower than the generic view, e.g., in cases of burglary convictions in common-law States . . . the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary.")

North Carolina recognizes only one crime of burglary – that at common law. N.C. Gen. Stat. § 14-51 ("There shall be two degrees in the crime of burglary as defined at the common law."). The elements of common law burglary are: 1) "a breaking"; (2) "and entering"; 3) "during the nighttime"; 4) "of a dwelling or sleeping apartment"; 5) "with intent to commit a felony therein[ ]"; whether the burglary is first or second-degree depends upon whether the building was occupied at the time. State v. Mumford, 41 S.E.2d 201, 202 (N.C. 1947) (citing § 14-51). It would seem, then, that burglary in North Carolina is more narrowly defined than "generic burglary" and would qualify categorically as a predicate offense under the ACCA. See e.g., United States v. Terry, 547 F. App'x 367, 368 (4th Cir. 2013) (unpublished) ("The elements of second-degree burglary in North Carolina clearly track the definition of "generic burglary.") (citations omitted); United States v. Riley, 542 F. App'x 290, 291–92 (4th Cir. 2013) (unpublished) ("Riley's North Carolina conviction for second-degree burglary qualifies as an ACCA predicate. The elements of second-degree burglary in North Carolina clearly track the definition of "generic burglary.") (citations omitted). Harris, however, contends that North Carolina interprets the term "dwelling" broadly to include enclosures excluded by generic burglary.

The Supreme Court has never defined the terms "building" or "other structure" in the context of generic burglary, although it has indicated those terms do not encompass every enclosure. See e.g., Shepard v. United States, 544 U.S. 13, 15–16 (2005) (stating that the generic

offense refers to burglary "committed in a building or enclosed space . . . not in a boat or motor vehicle"); Mathis, 136 S. Ct. at 2250 (finding that an Iowa burglary statute encompassed conduct outside the bounds of generic burglary because the statute specified that the crime could occur in a "land, water, or air vehicle"). The Supreme Court also has not defined the term "dwelling" in the context of common law burglary. The Fourth Circuit Court of Appeals, however, has interpreted Taylor, Shepard, and Mathis as establishing a bright line rule that for a state offense to be equivalent to, or narrower than, generic burglary, a dwelling cannot be a "boat, motor vehicle, or other enclosure that is excluded from the definition of generic burglary." United States v. Henriquez, 757 F.3d 144, 147 (4th Cir. 2014). See also United States v. White, 836 F.3d 437, 446 (4th Cir. 2016) (holding that West Virginia's burglary statute, W. Va. Code Ann. § 61–3–11(c), is broader than generic burglary because its definition of "dwelling house" included vehicles, even though the statute was limited to "nonmotive vehicle[s] primarily designed for human habitation and occupancy and used as a dwelling regularly or only from time to time") (citing Henriquez, 757 F.3d at 148-49).

North Carolina's burglary statute does not define "dwelling." See § 14-51. Therefore, the term is presumed to carry the same meaning as it did at common law. See N.C. Gen. Stat. § 4-1.[3] The original term for a dwelling at common law was a "mansion house." See W. LaFave & A. Scott, 3 Subst. Crim. L. § 21.1 (2d ed.) (2016) ("LaFave & Scott"); State v. Langford, 1

---

[3] North Carolina General Statute § 4-1 provides that:

> All such parts of the common law as were heretofore in force and use within this State, or so much of the common law as is not destructive of, or repugnant to, or inconsistent with, the freedom and independence of this State and the form of government therein established, and which has not been otherwise provided for in whole or in part, not abrogated, repealed, or become obsolete, are hereby declared to be in full force within this State.

Id. "By virtue of [§ 4-1], all parts of the common law of England which were heretofore in force and which have not been abrogated or repealed by statute remain in full force within this State. State v. Cox, 187 S.E.2d 785, 787 (N.C. 1972) (citing State v. Lackey, 155 S.E.2d 465 (N.C. 1967); State v. Ingland, 178 S.E.2d 577 (N.C. 1971)).

Dev. 253, 12 N.C. 253, 1827 WL 303, at *1 (1827) ("Burglary is a breaking and entering the *mansion* house of another in the night time, with an intent to commit some felony within the same, whether such intent be executed or not.") (alteration in the original)). "[F]rom its introduction[,]" however, "the term was understood to include all dwellings, regardless of their size or worth." LaFave & Scott, id.; see also Langford, id. ("But the law throws her mantle around the dwelling of man, because it is the place of his repose, and protects not only the house in which he sleeps, but also all others appurtenant thereto, as parcel or parts thereof, from meditated harm[.]"). Furthermore, to be a "dwelling" the structure must be used "habitually[ ] . . . as a place for sleeping[ ] . . . not . . . used occasionally, only, for such a purpose." State v. Jenkins, 5 Jones 430, 50 N.C. 430, 432, 1858 WL 1726, at *2 (1858).

Harris's assertion that North Carolina interprets the term "dwelling" broadly to include enclosures excluded by generic burglary appears to be foreclosed by the Fourth Circuit's published opinion in United States v. Mack, issued on May 1, 2017. Id., _ F.3d _, 2017 WL 1544953, at *4 (4th Cir. 2017). Mack was convicted of possession of a stolen firearm knowing that it was stolen, in violation of 18 U.S.C. § 922(j) and § 924(a)(2). Id. In calculating the recommended sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), the district court applied U.S.S.G. § 2K2.1(a)(2) (2014), which provided for a base offense level of 24 for the firearm offense at issue when the defendant had "at least two [prior] felony convictions of either a crime of violence or a controlled substance offense." Id. The court relied on Mack's two prior North Carolina convictions for (1) attempted first-degree burglary and conspiracy to commit first-degree burglary, and (2) felony breaking and entering, concluding that they were crimes of violence as defined in U.S.S.G. § 4B1.2(a) (2014). Id.

The 2014 Guidelines definition of "crime of violence" specifically included "burglary of a dwelling." U.S.S.G. § 4B1.2(a)(2). The Fourth Circuit construes "burglary of a dwelling"

8

under the Guidelines to mean generic burglary, as defined in Taylor, "with the additional requirement that a burglary qualifying as a 'crime of violence' must involve a dwelling." United States v. Bonilla, 687 F.3d 188, 190 n.3 (4th Cir. 2012); Mack, 2017 WL 1544953, at *3 ("[T]he Taylor requirement of a 'building or other structure' is, in turn, limited to a dwelling."). Thus, in this Circuit, generic "burglary of a dwelling" is the "unlawful or unprivileged entry into, or remaining in, a building or other structure" that is a dwelling, "with intent to commit a crime."[4] See Mack, 2017 WL 1544953, at *3.

On direct appeal, the Fourth Circuit held that North Carolina's crime of first-degree burglary, N.C. Gen. Stat. § 14-51, "categorically matches the generic definition of burglary of a dwelling in § 4B1.2(a)." Mack, 2017 WL 1544953, at *4. Such a holding would not be possible if the definition of "dwelling" under North Carolina's burglary law included enclosures -- such as boats or motor vehicles – that the Fourth Circuit has held are excluded from the generic definition of burglary. See e.g. Henriquez, 757 F.3d at 148 (The relevant question is "whether an enclosure that is excluded from the federal definition of generic burglary—such as a boat or motor vehicle—can be a 'dwelling' under Maryland's burglary statutes.").[5]

If North Carolina's crime of burglary "categorically matches the generic definition of

---

[4] Not all circuits apply the Guidelines in this manner. See e.g. United States v. Rivera-Oros, 590 F.3d 1123, 1132 (10th Cir. 2009) ("[F]or purposes of the crime of violence enhancement in [the Guidelines], a 'burglary of a dwelling' is not limited to permanent and immovable structures or buildings. Rather, a 'dwelling' includes any 'enclosed space that is used or intended for use as a human habitation.'" (quoting Black's Law Dictionary 582 (9th ed. 2009)); United States v. Murillo–Lopez, 444 F.3d 337, 345 (5th Cir. 2006) ("'Burglary of a dwelling' includes the elements of generic burglary as stated in Taylor but it also includes, at a minimum, tents or vessels used for human habitation.").

[5] Like Mack, Henriquez was a Guidelines case. At the time of Henriquez's sentencing, a defendant convicted of illegally reentering the United States was subject to a sentencing enhancement if, before his removal, he had been convicted of a "crime of violence." Henriquez, 757 F.3d. at 146 (citing U.S.S.G. § 2L1.2(b)(1)(A)(ii)). The Guidelines definition of "crime of violence" specifically included "burglary of a dwelling." Henriquez, 757 F.3d. at 147 (citing U.S.S.G. § 2L1.2 (b)(1)(A) cmt. n. 1 (B)(iii)). Although the Maryland statute in question limited burglary to breaking and entering "the dwelling of another with the intent to commit theft or a crime of violence," Md. Code Ann. Crim. Law § 6–202(a), the Fourth Circuit found there to be "a realistic probability that Maryland's statute covers burglaries of motor vehicles or boats—places that the United States Supreme Court has expressly excluded from generic burglary." Henriquez, 757 F.3d at 146.

burglary of a dwelling in § 4B1.2(a)," Mack, 2017 WL 1544953, at *4, it is narrower than generic burglary and qualifies as "burglary" under the ACCA's "enumerated offense" clause. See Mathis, 136 S. Ct. at 2248 (A state conviction will qualify as an enumerated offense under the ACCA, only if the elements of the state-law crime of conviction "are the same as, or narrower than, those of the [ACCA-enumerated] generic offense."). Moreover, the same holds true for North Carolina's second-degree burglary offense. As noted, whether a burglary is first or second-degree under § 14-51 depends upon whether the building was occupied at the time. See Mumford, 41 S.E.2d at 202 (citing § 14-51); see also LaFave & Scott, 3 Subst. Crim. L. § 21.1 (North Carolina is one of the few jurisdictions that "retain[s] the common-law requirement that the offense take place against a dwelling house or building within its curtilage for all degrees of the offense."). Accordingly, if first-degree burglary in North Carolina matches the generic definition of burglary, second-degree burglary does as well.

Harris, however, cites a North Carolina Court of Appeals decision that a travel trailer satisfied the occupied dwelling element of first-degree burglary, see State v. Taylor. 428 S.E.2d 273, 274 (N.C. Ct. App. 1993). The victim in Taylor, Matthew Ray, worked at a farm. While employed at the farm, he lived in "an eight by twelve foot travel trailer which was parked on the farm's property." Id. at 273. It is not clear from the court's factual summary whether the trailer belonged to Ray or the owner of the farm. One night, Ray was awakened by a knock at the trailer door. When he opened the door, Taylor and another man attacked Ray, punching, kicking, and stabbing him. They then stole Ray's gym bag from the trailer. Id.

Taylor was convicted of first-degree burglary under § 14-51. Id. at 274. On appeal, he argued that the travel trailer was not a permanent structure and that its mobility and lack of permanence prevented it from constituting a dwelling under § 14-51. Id. Taylor contended that N.C. Gen. Stat. § 14-56 was the proper statute to apply to his case. Id. At the time of his trial, §

14-56 provided, in relevant part, that "[i]f any person, with intent to commit any felony or larceny therein, breaks or enters any railroad car, motor vehicle, trailer, aircraft, boat, or other watercraft of any kind, containing any goods wares, freight, or other thing of value, . . . that person is guilty of a Class I felony." Taylor, 428 S.E.2d. at 274. The court rejected Taylor's argument that mobility should be the determining factor in considering whether a structure qualifies as a dwelling under § 14-51:

> In the case at bar, the fact that Mr. Ray was asleep in the travel trailer, having made it his living quarters for the time he was working at the farm is the determinative factor in considering whether the trailer qualifies as a dwelling under N.C. Gen. Stat. § 14-51. In the case of burglary, it would be absurd to base a determination on whether a burglary has taken place upon whether the trailer's weight rested on blocks or on tires. In the burglary context, it seems far more rational to consider whether or not the victim has made that trailer an area of repose, one which he can reasonably expect to be safe from criminal intrusion.

Id.[6]

This Court has been unable to find any North Carolina case that cites Taylor or, for that matter, any other North Carolina case applying § 14-51 to a vehicle, boat, or travel trailer. Furthermore, there is at least one North Carolina Supreme Court decision indicating that a "dwelling" must be some kind of permanent structure.

In State v. Jake, the court examined whether a log cabin belonging to the owners of a tobacco factory, in which the Superintendent of the factory usually slept, was a dwelling house, in which a burglary could be committed. 2 Win. 80, 1864 WL 1070 (N.C. 1864). After giving the common law definition of burglary, the court stated that, "[e]very *permanent building*, in

---

[6] Notably, the court's decision that the travel trailer was a dwelling in this instance was based upon how the trailer was used, not upon Ray's employment status at the farm. See e.g. State v. Fields, 337 S.E.2d 518, 522 n.3 (N.C. 1985) ("At common law, a building where the homeowner's servants habitually slept, as well as the house where he and his family slept, was protected by the law [against burglary]. But if the building housed a reposing watchman, whose job was solely to protect property, "then the house cannot be treated as a dwelling-house, and to break into it in the night-time with a felonious purpose would not be burglary." (citing State v. Williams, 90 N.C. 724, 729 (1884); State v. Potts, 75 N.C. 128, 131 (1876); State v. Outlaw, 72 N.C. 598, 602 (1875))).

11

which the owner or renter and his family, or any member thereof, usually and habitually dwell and sleep, is deemed a dwelling in which [burglary] may be committed." Id. at 81 (emphasis added). In concluding that the log cabin was a dwelling, the court observed that:

> [t]he building is described to be a small log house, and is called a log cabin; but it appears to have been a substantial, permanent one: and therein differs from a tent or a booth erected in a market or fair, in which no burglary could be committed, although the owner lodges in it.

Id. at 82 (citations omitted).

Additionally, the relationship between North Carolina's common law burglary offense and its statutory offense of breaking and entering a building, N.C. Gen. Stat. § 14-54(a), indicates that burglary applies to a restricted class of structures. Under § 14-54(a), "[a]ny person who breaks or enters any building with intent to commit any felony or larceny therein shall be punished as a Class H felon." As used in § 14-54, "building" includes "any dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house, and any other structure designed to house or secure within it any activity or property." § 14-54(c). In State v. Gamble, the North Carolina Court of Appeals held that the "'particular designations' in the G.S. 14-54(c) definition of 'building,' 'dwelling, dwelling house, uninhabited house, building under construction, building within the curtilage of a dwelling house,' indicate that the legislature intended the statute to proscribe breaking or entering into that which conforms to the common definition" of "building," i.e.,

> a constructed edifice designed to stand more or less permanently, covering a space of land, usu. [sic] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) . . . .

286 S.E.2d 804, 806 (N.C. Ct. App. 1982) (quoting Webster's Third New International Dictionary (1968 ed.) 292). For its part, the Fourth Circuit has held that § 14-54(a) "sweeps no

12

more broadly" than generic burglary and, therefore, qualifies as an ACCA predicate offense. United States v. Mungro, 754 F.3d 267, 272 (4th Cir. 2014) (citing § 14-54(a)).

It is well established that § 14-54(a) is a lesser-included offense of North Carolina's common law burglary offense. State v. Jolly, 254 S.E.2d 1 (N.C. 1979); State v. Bell, 200 S.E.2d 601 (N.C. 1973). "When a defendant is indicted for a criminal offense, he may be convicted of the charged offense or a lesser included offense when the greater offense charged in the bill of indictment contains all of the essential elements of the lesser[.]" State v. Bell, 200 S.E.2d 601, 603 (N.C. 1973), disapproved of on other grounds by State v. Collins, 431 S.E.2d 188 (N.C. 1993). One of the essential elements of § 14-54(a) is that the breaking and entering must be of a "building," as that term is commonly and usually meant.

It follows, then, that for § 14-54(a) to be a lesser-included offense of burglary, the structure protected under North Carolina's common law burglary offense must be a "building," that is used as a "dwelling." To hold that North Carolina's common law burglary offense sweeps more broadly than § 14-54 because it includes "dwellings" – such as boats or motor vehicles -- that are not "buildings," would require recognizing an exception to North Carolina court holdings that § 14-54(a) is a lesser-included offense of common law burglary. No North Carolina court, that this Court is aware of, however, has held that § 14-54(a) is only sometimes a lesser-included offense of burglary.

In sum, the North Carolina Court of Appeals' holding in State v. Taylor, 428 S.E.2d at 274, appears to be an outlier. Based upon this Court's review of the North Carolina courts' application of common and statutory law, there does not appear to be a "realistic probability" that North Carolina's common law burglary offense protects enclosures "the United States Supreme Court has expressly excluded from generic burglary." See Henriquez, 757 F.3d at 146.

### IV. CONCLUSION

Harris's 1988 North Carolina conviction for second-degree burglary is a violent felony under the ACCA's "enumerated offense" clause. See Mack, 2017 WL 1544953, at *4. Consequently, the holding in Johnson does not invalidate Harris's sentence enhancement under the ACCA. The Government's Motion to Dismiss shall be granted.

V. ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Government's Motion to Dismiss Harris's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 7) is **GRANTED**;

2. Harris's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DISMISSED**; and

3. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

Signed: May 17, 2017

Richard L. Voorhees
United States District Judge